

FILED
APR 29 2009

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

*******************************************************************

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | CR 08-50079 |
| Plaintiff, | * | |
| vs. | * | ORDER ON MOTION TO DISMISS |
| | * | FOR DENIAL OF DUE PROCESS |
| JOHN GRAHAM, a/k/a John Boy Patton, and VINE RICHARD MARSHALL, a/k/a Richard Vine Marshall, a/k/a Dick Marshall, | * | |
| Defendants. | * | |

*******************************************************************

Pending before the Court is Defendant Marshall's Motion to Dismiss For Denial of Due Process. (Doc. 172.) Marshall believes that evidence and the factual theories the government will rely upon in the prosecution of Marshall are inconsistent with the evidence and factual theories the government used to prove the guilt of Arlo Looking Cloud for the same crime in his trial and appeal.

Marshall first points to evidence presented by the government in the Looking Cloud trial that Looking Cloud handed the gun to John Graham at the scene of the murder immediately before Graham shot Annie Mae Aquash. This is not inconsistent with evidence that, earlier in the evening, the group stopped at Marshall's house and Marshall gave them the gun. The evidence about who handed the gun to whom at two different places and two different times is not irreconcilable or inconsistent. In other words, Marshall could have handed the gun to someone at his house, and later Looking Cloud could have handed the gun to Graham at the murder scene. Any inconsistencies about the sequence of stops made before the murder, *i.e.*, whether the group drove from Rapid City to Allen to Rosebud, or from Rapid City to Rosebud to Allen, can be the subject of cross-examination and would not violate Marshall's due process rights. Marshall asserts it is a reasonable

inference that Looking Cloud, Graham and Clark formed the intent to murder Aquash while they were at the house in Rosebud. Therefore, if they stopped at Marshall's house in Allen before they went to Rosebud, then the intent to kill was not present when they were at Marshall's home. It is true that inferences can be drawn, but it certainly is not clear when or where the decision was made to kill Ms. Aquash. Inferences may be drawn that the decision was made before they even left Denver, or while they were in Rapid City.

These alleged "inconsistencies" are not comparable to the case relied on by Marshall, *Smith v. Groose*, 205 F.3d 1045 (8th Cir. 2000). In the trial of the defendant in *Smith*, the prosecutor had used a statement made by a witness on December 2, 1983, to the effect that the victims were killed only after the defendant's group entered the house, thus implicating the defendant in the murder. But in the trial of a co-defendant, the State used the same witness's contradictory statement from November 30, 1983, to the effect that the victims were murdered before the defendant's group entered the house, thus implicating the co-defendant in the murder. *Id.* at 1050. Thus, "what the State claimed to be true in Smith's case it rejected in [the co-defendant's] case, and vice versa," so that the State had argued successfully in two separate cases that the murders occurred at two different times. *Id.* The Eighth Circuit ruled that the statements were "not factually consistent, nor could Smith have been convicted of felony murder under both theories." *Id.* at 1051. The Court noted that this was not a case of a witness changing his testimony at trial, but a case of the prosecutor choosing to use only those statements by the witness in each defendant's trial that would lead to a conviction of that defendant. *Id.* The Eighth Circuit explained that prosecutors need not present precisely the same evidence and theories in trials for different defendants, and that only inherently factually contradictory theories violate the principles of due process.

The anticipated evidence in this case does not involve inherently factually contradictory theories or prosecutorial inconsistencies. Evidence that Marshall gave the gun to Graham and Looking Cloud at his house in Allen does not foreclose the possibility that Looking Cloud handed the gun to Graham at the murder scene. The jury can decide the credibility of Looking Cloud's statements regarding the sequence of stops made along the way to the murder scene. Accordingly,

2

IT IS ORDERED that Defendant Marshall's Motion to Dismiss For Denial of Due Process, doc. 172, is denied.

Dated this 29th day of April, 2009.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY: Summer Wahpid
DEPUTY