UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. 08-50079-02 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| VINE RICHARD MARSHALL, | ) | |
| a/k/a RICHARD VINE MARSHALL, | ) | |
| a/k/a DICK MARSHALL, | ) | |
| | ) | |
| Defendant. | ) | |

## INTRODUCTION

Defendant Vine Richard Marshall has moved the court to suppress certain statements made to law enforcement officer Robert D. Ecoffey on December 26, 2003, on the ground that these statements were elicited in violation of his right to counsel as secured by the Sixth Amendment. The government resists Mr. Marshall's motion. The district court, the Honorable Lawrence L. Piersol, referred the motion to this magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## FACTS

The facts pertinent to this motion are taken from Mr. Marshall's motion to suppress, memorandum of law in support of his motion to suppress, and the affidavit of Charles Abourezk submitted in support of the motion. See Docket Nos. 402, 402-2, and 403. Robert Ecoffey, a law enforcement officer for the

1

government, has been investigating the 1975 murder of Anna Mae Aquash on the Pine Ridge Indian Reservation in the District of South Dakota since the time her body was discovered in March, 1976.

In January, 2003, the government subpoenaed Mr. Marshall to testify before a federal grand jury in this investigation. Attorney Charles Abourezk represented Mr. Marshall both before and during his appearance before the grand jury. In March, 2003, the grand jury indicted Arlo Looking Cloud and John Graham in the murder of Ms. Aquash.

On December 26, 2003, Mr. Ecoffey questioned Mr. Marshall about the case without Mr. Abourezk present. The statements Mr. Marshall made during this questioning are the subject of the suppression motion before the district court.

The government subpoenaed Mr. Marshall to testify before the grand jury a second time in July, 2008, at which time attorney Charles Abourezk again represented Mr. Marshall. In August, 2008, the grand jury indicted Mr. Marshall for the murder of Ms. Aquash.

Because the government knew prior to December 26, 2003, that Mr. Marshall was being represented by attorney Charles Abourezk, Mr. Marshall contends that the statements Mr. Ecoffey elicited from him on December 26, 2003, were taken in violation of his right to counsel under the Sixth Amendment.

## DISCUSSION

The Sixth Amendment provides in part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. "At the pre-indictment stage, appellant's sixth Amendment rights have not attached; . . ." In Re Grand Jury Subpoena Served Upon Doe, 781 F.2d 238, 243 (2d Cir. 1986). See also Kirby v. Illinois, 406 U.S. 682, 688 (1972) (plurality opinion):

> [t]he initiation of judicial criminal proceedings is far from a mere formalism. It is the starting point of our whole system of adversary criminal justice. For it is only then that the government has committed itself to prosecute, and only then that the adverse positions of government and defendant have solidified. It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law. It is this point, therefore, that marks the commencement of the 'criminal prosecutions' to which alone the explicit guarantees of the Sixth Amendment are applicable.

Kirby, 406 U.S. at 689-90.

A criminal prosecution has been initiated when a formal charge, preliminary hearing, indictment, information, or arraignment has been filed or has occurred. Doe, 781 F.2d at 244. The Sixth Amendment right to counsel does not attach during a grand jury investigation of an unindicted target. Id. (citing United States v. Mandujano, 425 U.S. 564, 581 (1976) (dicta in a plurality opinion); and In Re Groban, 352 U.S. 330, 333 (1957) (dictum)).

The burden of proving a Sixth Amendment violation rests with the defendant. See Kuhlmann v. Wilson, 477 U.S. 436, 459 (1986) (from which one infers that it is the defendant's burden); Moore v. United States, 178 F.3d 994,

3

999 (8th Cir.), cert. denied, 528 U.S. 943 (1999) (reciting that it is the defendant's burden to prove a Sixth Amendment violation).

In this case, the conversations between law enforcement and Mr. Marshall on December 26, 2003, took place nearly five years before the government indicted Mr. Marshall in August, 2008. Therefore, the rights provided under the Sixth Amendment did not attach as to Mr. Marshall until that August, 2008, indictment was handed down. It follows, then, that law enforcement could not have violated Mr. Marshall's Sixth Amendment rights five years before those rights had materialized.

In support of his motion, Mr. Marshall cites no cases that are factually apposite. All are distinguishable. Mr. Marshall cites Massiah v. United States, 377 U.S. 201 (1964); Edwards v. Arizona, 451 U.S. 477 (1981); and Brewer v. Williams, 430 U.S. 387 (1977). However, in all three of those cases, the respective defendants had already been formally charged and had either retained counsel or had asserted the right to counsel at the time law enforcement interrogated them. See Edwards, 451 U.S. at 478-49; Brewer, 430 U.S. at 398-99; Massiah, 377 U.S. at 201-03. Therefore, because formal judicial proceedings against the defendants had been initiated in these cases, the defendants' Sixth Amendment rights had attached at the time each was interrogated. Mr. Marshall had not been indicted at the time he spoke with Mr. Ecoffey, and the facts of his case are therefore distinguishable.

4

In another case cited by Mr. Marshall in support of his motion, Moran v. Burbine, 475 U.S. 412 (1986), the defendant had been arrested for a burglary at the time police questioned him about a murder. Id. at 415-18. He neither retained a lawyer nor asserted his right to counsel when law enforcement read him his Miranda[1] rights, which he agreed to waive. Id. Although the defendant was given access to a telephone, he declined to use it. Id. Unbeknownst to the defendant, his sister had hired a lawyer to represent him on the burglary charges. Id. The attorney contacted the police, who falsely told the attorney that no interview would take place. Id. Following a series of police interviews, the defendant ultimately signed three incriminating written statements as to the murder. Id. The defendant unsuccessfully moved to suppress the statements. Id. at 418.

The Supreme Court held that the defendant's waiver of his Miranda rights was freely and voluntarily made and that the fact that the defendant was unaware of the attorney's phone call did not affect this conclusion. Id. at 424,

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966). The holding in Miranda is that, prior to conducting custodial interrogation of a suspect, police must advise the suspect that he has the right to remain silent, that anything he says can and will be used against him in court, that he has a right to have counsel present at the interrogation, and that if he cannot afford to hire an attorney, then an attorney will be appointed to represent him. Id. at 467-79. Once the advisement is given, police are permitted to interrogate only if the suspect makes a voluntary and knowing waiver of the rights he has just been advised of. Id. A suspect is considered to be "in custody" when he is under arrest, or under other circumstances restricting the suspect's freedom to a degree associated with formal arrest. Berkemer v. McCarty, 468 U.S. 420, 442 (1984).

428. As to the defendant's argument that the interrogation violated his right to counsel under the Sixth Amendment, the Court noted that the interrogation took place *before* the defendant was charged with the crime of murder. Id. at 428-29. The Court concluded that, because a defendant's Sixth Amendment right to counsel does not attach until the defendant is formally charged, there could be no Sixth Amendment violation under these circumstances. Id.

The defendant in Moran specifically argued that the fact that he had not yet been formally charged with murder was not fatal to his Sixth Amendment argument. Id. He argued that the integrity of the attorney-client relationship should be protected, at least in some situations such as custodial interrogation, even where formal charges have not yet been asserted by the government. Id. at 429. The Court rejected this position. Id. The Court explained that the Sixth Amendment, "[b]y its very terms, . . . become[s] applicable only when the government's role shifts from investigation to accusation. For it is only then that the assistance of one versed in the 'intricacies . . . of law,' is needed to assure that the prosecution's case encounters 'the crucible of meaningful adversarial testing.' " Id. at 430 (quoting United States v. Cronic, 466 U.S. 648, 656 (1984)). Furthermore, citing Maine v. Moulton, 474 U.S. 159 (1985), also relied upon by Mr. Marshall in his brief, the Court stated that the fact that a defendant is represented by an attorney even though he has not yet been indicted does not change the Sixth

6

Amendment analysis. Id. at 431. Mr. Marshall has thus failed to carry his burden of demonstrating that law enforcement violated his Sixth Amendment rights when statements were elicited from him on December 26, 2003.

Mr. Marshall's argument, though nominally based on the Sixth Amendment, really seems more akin to the rules of ethics governing lawyers. Under those rules, an attorney who knows that a party is represented is forbidden from communicating with that party in the absence of the party's attorney about the substance of the attorney's representation. See American Bar Association Model Rule of Professional Conduct 4.2. However, ethical rules governing the conduct of attorneys do not supplant the analysis under the Sixth Amendment, as the Supreme Court recently held in Montejo v. Louisiana, ___ U.S. ___, 129 S. Ct. 2079, 2087-88 (2009), a case cited by neither Mr. Marshall nor the government in their briefs.[2]

In Montejo, the defendant had been charged and an attorney had been appointed by the state court to represent him, but the record was devoid of any evidence that Montejo had ever asked for an attorney or otherwise affirmatively asserted his right to counsel under the Sixth Amendment. Id. at 2082-83. In arguing that his Sixth Amendment rights had been violated by the police when they questioned him in the absence of his lawyer after his initial court

---

[2] The Montejo decision was issued nine days before Mr. Marshall filed his motion and more than a month prior to the government's responsive brief.

appearance, Montejo urged the Court to adopt the position that police should never have contact with a represented defendant in the absence of his lawyer.[3] Id. at 2083-91.

Noting that Montejo's position had its "theoretical roots" in the ABA model rule noted above, the Court declined to hold that those model rules had any application to Sixth Amendment analysis. Id. at 2087-89. First, the Court noted that the Model Rules of Professional Conduct govern the actions of attorneys and that the police who interrogated Montejo were not attorneys. Second, the Court noted that under the Model Rules, an attorney would be guilty of an ethical violation for talking to a represented party even if the represented party was the one who initiated contact with the attorney. Id. By contrast, under established Sixth Amendment precedent, police may interrogate a defendant in a criminal case who is represented by counsel if the defendant is the one who initiates contact. Id.

---

[3]The police read Montejo his Miranda rights and he waived those rights before speaking to the police. Montejo, 129 S. Ct. at 2082. Even though, under the facts of Montejo, the Sixth Amendment right to counsel had attached, the Court held that the police could appropriately ask Montejo to waive his right to counsel after it had attached (in large part because the record was unclear as to whether Montejo had ever affirmatively invoked his right to counsel). Id. at 2090-91. The Court continued to adhere to the Fifth Amendment rule, announced in Edwards, *supra*, that once a defendant clearly and unequivocally invokes his right to counsel after formal charges have been brought, police may not initiate contact with the defendant and ask him again to waive that right. Id. at 2091-92.

In this case, like Montejo, the police officer who interrogated Mr. Marshall on December 26, 2003, was not a lawyer and, thus, was not bound by the ABA Model Rules. In addition, because the Sixth Amendment had not attached, there was no prohibition against the police contacting Mr. Marshall in the absence of his lawyer. Mr. Marshall has cited to no precedent that would support an extension of the Sixth Amendment beyond its well-established boundaries to cover the facts surrounding the making of his statement on December 26, 2003. Because Mr. Marshall's Sixth Amendment argument fails as a matter of law, no evidentiary hearing is necessary. This court recommends denial of his suppression motion on the briefs alone.

The entirety of the legal analysis and factual discussion in Mr. Marshall's pleadings are devoted to his Sixth Amendment argument. However, at the bottom of page three of Mr. Marshall's memorandum of law in support of his motion, there is literally a bare citation to the Fifth Amendment. See Docket 403, at page 3. From this bare citation to the Fifth Amendment, the court is unable to discern whether Mr. Marshall is indeed making an argument to suppress based on the Fifth Amendment. Mr. Marshall never discusses which aspect, if any, of his Fifth Amendment rights he believes the government to have violated.[4] He never discusses any legal authority analyzing the Fifth

---

[4]For example, the Fifth Amendment is the basis of the holding in Miranda. It is also the basis of the rule that coerced statements are not admissible. Mr. Marshall never asserts that his interview with the police on

Amendment.  He never asserts any facts which the court could interpret as supporting a Fifth Amendment argument of any kind.  The court will not be in the position of guessing what the basis of Mr. Marshall's Fifth Amendment argument is, if it is being asserted at all.

Accordingly, although the court recommends denial of Mr. Marshall's suppression motion in all respects, Mr. Marshall will be given fourteen days from the date of this report to file a supplemental brief to explain his Fifth Amendment argument if indeed he is asserting such an argument.  If no brief is filed within the given time frame, Mr. Marshall shall be waiving any argument to suppress based upon the Fifth Amendment.  The government shall have seven days to respond to any supplemental brief filed by Mr. Marshall.

## CONCLUSION

Based on the foregoing discussion, the court hereby recommends that Mr. Marshall's motion to suppress [Docket No. 402] be denied in its entirety. In the event Mr. Marshall files a supplemental brief on the issue of any argument premised on the Fifth Amendment, the court will issue a supplemental report and recommendation on that claim.

---

December 26, 2003, was a custodial interrogation necessitating the advisement of <u>Miranda</u> rights.  He also never argues any facts or legal authority to the effect that police coerced him into making the statements he made on that date.

10

**NOTICE TO PARTIES**

The parties have fourteen (14) days after service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1)(B), unless an extension of time for good cause is obtained. See Fed. R. Crim. P. 59(b); 28 U.S.C. § 636(b)(1)(B). Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Id. Objections must be timely and specific in order to require *de novo* review by the district court. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

Dated December 10, 2009.

BY THE COURT:

/s/ *Veronica L. Duffy*

VERONICA L. DUFFY
UNITED STATES MAGISTRATE JUDGE