UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION



FILED
FEB 03 2010
CLERK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. 08-50079-02 |
| Plaintiff, | ) | |
| vs. | ) | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT MARSHALL'S MOTION FOR PRODUCTION OF HANDWRITTEN NOTES |
| VINE RICHARD MARSHALL, a/k/a RICHARD VINE MARSHALL, a/k/a DICK MARSHALL, | ) | |
| Defendant. | ) | |

**INTRODUCTION**

Defendant Vine Richard Marshall has moved the court for an order compelling the government to provide to the court for *in camera* inspection handwritten notes by government investigators and attorneys of a proffer session with a key government witness, Arlo Looking Cloud, which took place on August 19, 2008. See Docket No. 571. The government resists this motion. Previously, the court ordered the government to turn over to the court for *in camera* review the handwritten notes of any investigative agent present at the proffer with Looking Cloud and also the typewritten summary of those notes.

**DISCUSSION**

There are several Eighth Circuit cases that discuss a defendant's right to handwritten notes where a typewritten summary of a witness interview was provided instead to the defendant. Two grounds have generally been identified

1

by defendants to compel the government to disclose handwritten notes: the Jencks Act, 18 U.S.C. § 3500, and Brady v. Maryland, 373 U.S. 83 (1963).

The Jencks Act is unavailing to Mr. Marshall. The Eighth Circuit has held that the Jencks Act requires the government to produce "statements" of government witnesses and that an investigator's notes taken during an interview with a witness do not constitute a "statement" for purposes of the Jencks Act. See United States v. Wright, 540 F.3d 833, 841-42 (8th Cir. 2008). The Wright case was decided solely on the Jencks Act issue; no argument was raised under Brady. Id. at 841-42.

The Brady case stands for the proposition that "the government is required, pursuant to a discovery request by a defendant, to produce all evidence favorable to the defendant, and that the suppression of such favorable, material evidence violates due process." United States v. Grunewald, 987 F.2d 531, 535 (8th Cir. 1993). Impeachment evidence falls under Brady when the reliability of a given witness may be determinative of a defendant's guilt or innocence. Giglio v. United States, 405 U.S. 150, 154 (1972). Where there is no material difference between handwritten notes and typewritten summaries, the defendant cannot show that there has been a Brady violation. Grunewald, 987 F.2d at 535.

In Greatwalker, the government provided the defendant in pretrial discovery the typewritten reports of government interviews with witnesses. Greatwalker, 356 F.3d at 911-12. The government then provided the

defendant with the handwritten notes from those witness interviews during trial. Id. The Eighth Circuit held that no Jenks Act violation occurred. Id. However, the court sidestepped the Brady issue, holding only that *if* any Brady violation had occurred, it was harmless because the defendant's ability to cross-examine witnesses was not so impaired as to deny him due process. Id. at 912.

In United States v. Grunewald, 987 F.2d 531 (8th Cir. 1993), the government had provided the defendant with an IRS agent's typewritten summaries of interviews, but had not produced the handwritten notes from those interviews. Id. at 535. The district court had reviewed the handwritten notes *in camera* and found no material differences between the notes and the typewritten summaries. Id. On appeal, the defendant argued that the refusal of the government to disclose the handwritten notes to him was a violation of the Jenks Act and Brady. Id. The Eighth Circuit stated that "while the more prudent and expeditious route would have been for the government to provide the handwritten notes," there was no clear error in the district court's failure to order the government to do so. Id.

Based on the above authorities applying Brady to the issue of production of handwritten notes, much hinges on whether the handwritten notes differ materially from the typewritten summaries. The court has not found any case defining what constitutes a material difference under these circumstances. However, there are definitions in other contexts. A statement is deemed

" 'material' if it has a natural tendency to influence or be capable of influencing" a decision. United States v. Turner, 189 F.3d 712, 722 (8th Cir. 1999). "For a statement to be material under [Title 18] section 1001, it must have the natural tendency to influence, or capability of influencing," a decision or performance of a function. United States v. Baumbardner, 85 F.3d 1305, 1307 n.1 (8th Cir. 1996) (quoting United States v. Gaudin, 515 U.S. 506, 509 (1995)).

Here, the court's review of the handwritten notes submitted *in camera* along with the agent's typewritten summary reveals that the typewritten summary is a nearly verbatim reproduction of the handwritten notes. The agent faithfully included nearly every detail related by Looking Cloud as evidenced in the handwritten notes. There are only two exceptions that the court noted. Both are indicated on the handwritten notes by yellow highlighting. The court files the notes and the typewritten summary under seal as appendices to this opinion to facilitate appellate review should either party desire to avail themselves of that right.

The first highlighted item is clearly not material. It adds depth to Looking Cloud's statement in that it provides background. This omission does not dictate that the government turn over the handwritten notes.

The second highlighted item is more troublesome. As Mr. Marshall has asserted numerous times, Looking Cloud will be "a" if not "the" key witness against him at his trial. Furthermore, Looking Cloud has taken the position in

past statements that he was innocent of any wrongdoing with regard to Anna Mae Aquash's death. Mr. Marshall has characterized these statements by Looking Cloud as "false."

Whether false or not, it is clear that impeachment information with regard to Looking Cloud may constitute Brady material via Giglio. The second highlighted omission in the handwritten notes would tend to undermine Looking Cloud's assertion of innocence with regard to Ms. Aquash's death by showing that he was aware of facts prior to her death that, if one was alert, portended her death.

The question of whether this omission constitutes Brady material is a close one. The information would clearly be of a nature that Mr. Marshall would use at trial given his already-announced theme for cross-examining Looking Cloud. On the other hand, the court fails to see any prejudice to the government that would arise from disclosure of the handwritten notes. As stated above, the typewritten version is a nearly-verbatim recitation of the handwritten information. The court has no reason to suspect that the omission was anything other than inadvertent. Accordingly, the court concludes that the "more prudent and expeditious route" would be to order the government to turn the handwritten notes over to Mr. Marshall. Grunewald, 987 F.2d at 535.

## CONCLUSION

It is hereby

ORDERED that Mr. Marshall's motion for production [Docket 571] is granted in part and denied in part. The government shall produce to Mr. Marshall noon on Wednesday, February 10, 2010, the handwritten notes previously provided to the court *in camera*. In the event the government elects to appeal this decision to the district court, such appeal shall be taken prior to noon on Wednesday, February 10, 2010, in which case the government may stay its production of the notes until the district court has ruled on the appeal. The ordinary time frame for taking an appeal would be 14 days. However, in view of the imminent start of the trial in this matter, the court is for good cause shortening the appeal period to 7 days.

Dated February 3, 2010.

BY THE COURT:

VERONICA L. DUFFY
UNITED STATES MAGISTRATE JUDGE