UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. 08-50079-02 |
| Plaintiff, | ) ) ) | |
| vs. | ) ) ) | **ORDER ON GOVERNMENT'S MOTION TO QUASH OR MODIFY SUBPOENA DUCES TECUM ISSUED TO UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES AND RESPONSE TO ORDER TO SHOW CAUSE** |
| VINE RICHARD MARSHALL, a/k/a RICHARD VINE MARSHALL, a/k/a DICK MARSHALL, | ) ) ) ) | |
| Defendant. | ) ) | |

**INTRODUCTION**

The government moves this court for an order quashing or modifying the subpoena *duces tecum* previously issued to Douglas C. Moring, custodian of records at the National Records Center in Lee's Summit, Missouri. Docket Nos. 698, 703. The government's motion also serves as its response to the court's previous order to show cause why Mr. Moring should not be held in contempt of court for refusing to comply with the district court's order directing him to produce evidence in this case. Docket No. 676.

By its order of January 20, 2010, the district court granted Mr. Marshall's motion for the issuance of a subpoena *duces tecum* directing Douglas C. Moring of the National Records Center in Lee's Summit, Missouri,

to deliver certain records in his custody to defense counsel by the close of business on February 2, 2010.  Docket No. 576.  Mr. Moring did not produce the documents in compliance with the court's order, and Mr. Marshall filed a motion for an order to show cause why Mr. Moring should not be held in contempt for failure to comply.  Docket No. 676.  That motion was referred to this magistrate for resolution, and this court ordered Mr. Moring to file a response to Mr. Marshall's motion for an order to show cause, or to otherwise show why Mr. Marshall's motion should not issue, by close of business on March 22, 2010.  Docket No. 680.

In response, the government filed the present motion requesting the court quash or modify the subpoena issued to the custodian of records. Docket Nos. 698, 703.  The government makes its request on grounds that the subpoena is overly broad, unspecific, and seeks information that is not in any way relevant to the underlying criminal case, and is therefore unreasonable and oppressive.  Docket No. 698.  The government makes an additional argument that the subpoena directs the production of documents that are subject to the protection of the law enforcement privilege.  Docket No. 703.

Mr. Marshall's response to the government's motion to quash or modify asserts that his affidavit in support of the motion for the subpoena sufficiently and specifically set forth his need for the documents in the immigration materials and A-file of a particular named witness, as well as the relevance and

2

admissibility of those materials. Docket No. 721. Mr. Marshall also argues that the law enforcement privilege does not apply, but that if the court finds it does apply, that the government has waived the privilege because its motion to quash is untimely. Id. Finally, Mr. Marshall argues that his need for the subpoenaed evidence, combined with his constitutional right to present that evidence at his trial, outweighs the government's right to invoke the qualified law enforcement privilege. Id. The court now turns to the arguments set forth by the parties.

## DISCUSSION

**A.    Requirements for Issuance of a Federal Rule 17(c) Subpoena**

Federal Rule of Criminal Procedure 17(c) provides that a subpoena in a federal criminal case "may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates." Fed. R. Crim. P. 17(c)(1). Rule 17 was not intended to provide a means to obtain discovery, unlike its corresponding counterpart in the Federal Rules of Civil Procedure. See United States v. Nixon, 418 U.S. 683, 698 (1974). As the government correctly points out, Rule 17 was intended to "expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials." Id. at 698-99.

To obtain the subpoenaed materials, the party who caused the subpoena to be issued must demonstrate: "(1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of

trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.' " Id. at 699-700. Put more simply, the moving party "must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity." Id. at 700. The "specificity and relevance elements require more than the title of a document and conjecture as to its contents." United States v. Hardy, 224 F.3d 752, 754 (8th Cir. 2000) (quoting United States v. Arditti, 955 F.2d 331, 346 (5th Cir.), cert. denied, 506 U.S. 998 (1992)).

The government argues generally that Mr. Marshall has not sufficiently demonstrated the relevancy and admissibility of the subpoenaed materials, but argues more forcefully that the subpoena lacks sufficient specificity. Docket No. 703. Mr. Marshall contends that his application and affirmation in support of an order for the issuance of the subpoena (Docket No. 519) sufficiently and specifically sets forth the materials he seeks and why the material is admissible and relevant to this case.

### 1. Whether the Subpoenaed Materials are Relevant

The government argues that the subpoena "bears no relevance to the charges in the controlling indictment or any defense thereto" and that "there has been no showing, at any time, that the requested documents would be relevant or admissible." Docket No. 703. Mr. Marshall asserts to the contrary

4

that the subpoenaed materials contain important Giglio evidence and evidence as to the particular named witness' bias or motive for testifying. Docket No. 519, at 2; Docket No. 721, at 10; see Giglio v. United States, 405 U.S. 150 (1972).

Without a doubt, evidence as to the particular named witness' bias or motive to give testimony tending to incriminate Mr. Marshall is relevant. "The partiality of a witness is subject to exploration at trial, and is 'always relevant as discrediting the witness and affecting the weight of his testimony.' " Davis v. Alaska, 415 U.S. 308, 316 (1974)(quoting 3A J. Wigmore, Evidence § 940, p. 775 (Chadbourn rev. 1970)). The Supreme Court has held steadfast to the proposition that "the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." Davis, 415 U.S. at 316-17 (citing Greene v. McElroy, 360 U.S. 474, 496 (1959)).

Mr. Marshall maintains that the subpoenaed material includes evidence of the particular named witness' biases or motives to testify, and that the particular named witness is a former confidential informant ("CI") who is likely to testify against Mr. Marshall as a government witness. The court finds that these factors are sufficient to demonstrate that the subpoenaed materials are relevant.

**2. Whether the Subpoenaed Materials are Admissible**

As stated in the foregoing section, the bias or motives of a testifying government witness is always relevant. Davis v. Alaska, 415 U.S. 308 (1974). "Likewise, evidence showing a witness's bias is almost always admissible," subject to exceptions set forth by the Federal Rules of Evidence, the Constitution, or other legislation. United States v. Harris, 956 F.2d 177, 181 (8th Cir. 1992)(quoting United States v. Abel, 469 U.S. 45, 52 (1984)); United States v. Holmes, 413 F.3d 770, 773 (8th Cir. 2005)(citing Fed. R. Evid. 402). Therefore, evidence tending to show a witness' bias or motive for testifying in a particular way is both relevant and admissible.

**3. Whether the Subpoenaed Materials are Sufficiently Specified**

The government argues that the subpoena does not sufficiently set forth specific documents that are relevant and admissible. Mr. Marshall asserts that the documents have been set forth with specificity. The specific language of the subpoena issued to Mr. Moring directs him to produce:

> All records, documents, correspondence and writings of any kind in the possession or control of the United States Citizenship and Immigration Services concerning a British citizen named _____, presently residing in the United States, and whose present address is believed to be: _____, including copies of all documents and writings in _____'s "A-file" or alien file.

Docket No. 519.[1]

---

[1] The court has redacted the name and address of the particular named witness whose immigration files are the subject of the subpoena.

The subpoena requests a discrete category of information regarding a single, named individual, whose A-file and other immigration documents were assembled at a discrete point in time known only to the government agencies assembling the file. Mr. Marshall should not be faulted for failing to identify the dates during which the particular named witness' immigration file was created. Similarly, the subpoena requests only those documents in the possession or control of the single named governmental agency, the United States Citizenship and Immigration Services.

Based on the foregoing, the court disagrees with the government's characterization that the subpoena is insufficiently specific. The court finds the subpoena demonstrates relevance, admissibility, and sufficient specificity, and accordingly denies the motion to quash or modify the subpoena on these bases.

**B.    The Law Enforcement Privilege**

The government argues that the law enforcement privilege permits it to withhold the materials in the particular named witness' A-file. Mr. Marshall argues that the law enforcement privilege does not apply to the facts of this case, or alternatively, that if the privilege does apply to this case, the government has waived the privilege by filing an untimely motion to quash the subpoena.

The Eighth Circuit Court of Appeals has generally recognized the government's qualified, common law privilege to withhold the identity of

informants, which privilege is intended to "further and protect the public interest in effective law enforcement." Barnes v.Dormire, 251 F.3d 767, 769 (8th Cir. 2001)(quoting Rovario v. United States, 353 U.S. 53, 55 (1957)). However, "[t]he scope of the privilege is limited by its underlying purpose." Rovario, 353 U.S. at 60. Where disclosure of the contents of a confidential informant's communication to law enforcement will not tend to reveal the CI's identity, the contents of the communication are not privileged. Id. Furthermore, "once the identity of the informer has been disclosed to those who would have cause to resent the communication, the privilege is no longer applicable." Id.

Generally, where the government invokes the law enforcement privilege, the defendant has the burden to show that disclosure of the CI's identity "is material to the outcome of his case." Barnes, 251 F.3d at 770 (quoting United States v. Gonzalez-Rodriguez, 29 F.3d 948, 951 (8th Cir. 2001)). Here, however, the identity of the former confidential informant is a matter of public record. This case does not involve a confidential informant *per se,* because the witness' name is widely known and is readily available to the public and to anyone who would "have cause to resent" any statements he made to law enforcement officers. The otherwise justifiable concern for protection of the witness' identity is moot, because his name and details of his activities as an informant were produced to defense counsel for Arlo Looking Cloud, prior to

Mr. Looking Cloud's 2004 trial for the murder of Ms. Aquash. Therefore, the court agrees with Mr. Marshall that there is no "secret identity or anonymity to protect," and that the primary purpose for invocation of the law enforcement privilege is absent.

A secondary purpose for invocation of the law enforcement privilege is protection of "investigative files in an ongoing criminal investigation." In re U.S. Dept. of Homeland Sec., 459 F.3d 565, 569 (5th Cir. 2006)(quoting Coughlin v. Lee, 946 F.2d 1152, 1159 (5th Cir. 1991)). In that case, cited by both the government and Mr. Marshall to support their respective positions as to the existence of the law enforcement privilege, the court undertook a brief review of the various Courts of Appeals to recognize the privilege. In re U.S. Dept. of Homeland Sec., 459 F.3d at 570, n.1. All of the circuits noted therein to have recognized the privilege have acknowledged that the privilege is intended to protect ongoing investigations. Id. The Fifth Circuit decided that the district court should review the documents *in camera* to determine whether the law enforcement privilege applied. Id. at 570.

As to the "ongoing investigation" requirement for application of the law enforcement privilege, the court finds the privilege inapplicable to the contents of the particular named witness' A-file. The witness is not part of an ongoing investigation; Mr. Marshall was indicted in 2008, and any involvement by

9

the witness as a confidential informant necessarily ended in 2004, when his identity was made public during proceedings against Arlo Looking Cloud.

Finally, the law enforcement privilege is limited by "relevance and time constraints." Id. The privilege lapses "either at the close of an investigation or at a reasonable time thereafter based on a particularized assessment" of the materials. Id. The government's investigation of Mr. Marshall is not currently "ongoing." While the proceedings against him are ongoing, there is no active investigation currently taking place as to Mr. Marshall's involvement in the murder of Anna Mae Aquash. Certainly it cannot be said that the particular named witness' immigration files are essential to an active investigation of Mr. Marshall. For that reason, the court finds that even if the law enforcement privilege were applicable in the past, it is no longer applicable because the investigation of Mr. Marshall is not "ongoing," and that a reasonable time has passed following the close of the investigation.

**C.    Application of the Law to the Facts of this Case**

In this case, Mr. Marshall established with sufficient specificity the evidentiary nature of the requested materials in his affirmation in support of the motion for issuance of the subpoena. See Docket No. 519. He has stated why he wants to obtain the materials contained in the particular named witness' immigration files, and what he expects the A-file will contain. He has also set forth his belief that the materials contain Giglio material that will

demonstrate the witness' bias or motive to cooperate with the government's investigation of Mr. Marshall.

The court notes that Mr. Marshall speculates that the materials will provide impeachment evidence against the particular named witness, should he be called to testify in the government's case against him. However, "[g]enerally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial [under Rule 17(c) ]." Nixon, 418 U.S. at 701. Mr. Marshall has not set forth other compelling reasons to persuade the court that he requires the materials prior to trial.

**D.     Whether Compliance with the Subpoena is Unreasonable or Oppressive**

Even if Mr. Marshall had met the requirements of relevance, admissibility, and specificity, the district court may quash a subpoena under Rule 17(c) if production of the materials would be "unreasonable or oppressive." Fed. R. Crim. P. 17(c). If "the burden of producing subpoenaed records greatly outweighs any relevance they may have to the case," the subpoena may be properly quashed. United States v. Roach, 164 F.3d 403, 412 (8th Cir.1998) (citing United States v. Kalter, 5 F.3d 1166, 1169 (8th Cir.1993), cert. denied, 528 U.S. 845 (1999)).

Here, the government asserts that compliance with the subpoena would require searching for two to four hours each on approximately twenty-two systems of records under the Privacy Act, and "could cost as much as

11

$10,000." Docket No. 703. However, it is significant to note that the government waited until the last possible moment to complain that a search for the documents requested pursuant to the subpoena, served on the custodian of records on January 28, 2010, would be time-consuming, oppressive, or unduly burdensome. Apparently, the custodian of records undertook to begin his search in a diligent, timely manner, but then all communications with defense counsel ceased, and no explanation has been given for why the search for records was not completed or, at a minimum, was not initiated. The court is not persuaded that the government's complaints of cost and time constraints are an appropriate reason to quash the subpoena at this late date, when the search could have been performed and the documents produced, had the custodian undertaken a search with diligence at the time the subpoena was issued.

Although the court finds that the law enforcement privilege does not apply to the circumstances of this case, Mr. Marshall has not provided a sufficient impetus for pre-trial discovery of the materials, other than his belief that the materials contain impeachment evidence. Because no basis other than that the subpoenaed materials may contain impeachment evidence has been presented to the court, the court finds it appropriate in this case to order the documents to be produced to the court for *in camera* review. Furthermore, although the investigation as to Mr. Marshall's involvement in the murder of

Ms. Aquash is not ongoing, there may be ongoing investigations as to other unindicted participants or co-conspirators. For that additional reason, the court finds that *in camera* review of the subpoenaed materials is appropriate. To that end, the government shall produce the A-file to the court forthwith for *in camera* review, so the court can ascertain whether materials other than Giglio evidence is present in the immigration files and A-file and must be produced in advance of trial.

## CONCLUSION

Based on the foregoing, the court hereby

ORDERS that the government shall produce to the court for in camera review all documents described in the subpoena duces tecum issued to Mr. Douglas Moring. The government shall cause the documents to be sent via overnight mail service to the court to permit the court to review the documents. The ordinary time frame for taking an appeal would be 14 days. However, in view of the imminent start of the trial in this matter, the court is for good cause shortening the appeal period to 7 days.

## NOTICE OF RIGHT TO APPEAL

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law. The parties have seven (7) days after service of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1)(A), unless an extension of time for good cause is obtained. See Fed. R. Crim. P. 58(g)(2);

59(a). Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Fed. R. Crim. P. 59(a) Objections must be timely and specific in order to require review by the district court.

Dated April 1, 2010.

BY THE COURT:

/s/ *Veronica L. Duffy*
VERONICA L. DUFFY
UNITED STATES MAGISTRATE JUDGE